# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:14-CV-178-GCM-DCK

| | |
|---|---|
| CARLA DANIELLE BENDER,   )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>CAROLYN W. COLVIN,   )<br>Acting Commissioner of Social Security,   )<br>)<br>Defendant.   )<br>  ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 11) and "Defendant's Motion For Summary Judgment" (Document No. 12). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I.   BACKGROUND

Plaintiff Carla Danielle Bender ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On December 2, 2010, Plaintiff filed an application for a period of disability and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning December 20, 2006. (Transcript of the Record of Proceedings ("Tr.") 25, 148-156). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on March 2, 2011, and again after

reconsideration on July 21, 2011. (Tr. 25, 71, 84, 100-103, 106-110). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing some types of work, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 106).

Plaintiff filed a written request for a hearing on September 8, 2011. (Tr. 25, 111-113). On January 23, 2013, Plaintiff appeared and testified at a hearing before Administrative Law Judge Thaddeus Hess ("ALJ"). (Tr. 25, 37-70). In addition, Leanna Hollenbeck, a vocational expert ("VE"), Amy Cox, Plaintiff's attorney, and Jane Bender, Plaintiff's mother, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on February 27, 2013, denying Plaintiff's claim. (Tr. 22-34). Plaintiff filed a request for review of the ALJ's decision on May 3, 2013, which was denied by the Appeals Council on May 13, 2014. (Tr. 21, 1-5). The February 27, 2013 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on July 17, 2014. (Document No. 1). On August 1, 2014, the undersigned was assigned to this case as the referral magistrate judge. "Plaintiff's Motion For Summary Judgment" (Document No. 11) and "Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary

Judgment" (Document No. 11-1) were filed November 26, 2014; and "Defendant's Motion For Summary Judgment" (Document No. 12) and "Memorandum in Support of Defendant's Motion for Summary Judgment" (Document No. 13) were filed January 20, 2015. On February 6, 2015, "Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" (Document No. 14) was filed. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability

determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between December 2, 2010 and February 27, 2013, the date of his decision.[1] (Tr. 25). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 33).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since December 2, 2010, the date she filed her application for SSI. (Tr. 27). At the second step, the ALJ found that Asperger's syndrome, obsessive compulsive disorder, anxiety disorder, obesity, hypertension, and diabetes mellitus were severe impairments.[2] (Tr. 27). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 28).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the following limitations: "she requires simple one-two step tasks, rare interaction with the general public, and occasional interaction with co-workers." (Tr. 30). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id. The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 31).

At the fourth step, the ALJ held that Plaintiff had no past relevant work. (Tr. 33). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 33). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included laundry worker, garment bagger, and cleaner-housekeeper. (Tr. 33-34). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between December 2, 2010, and the date of his decision, February 27, 2013. (Tr. 34).

Plaintiff on appeal to this Court raises the following issues: (1) whether substantial evidence supports the ALJ decision; (2) whether the ALJ properly considered and weighed relevant evidence; and (3) whether the ALJ assigned proper weight to the findings and opinions of Plaintiff's treating sources. (Document No. 11-1, pp. 2, 4-6). The undersigned will discuss each of these issues in turn.[3]

---

[3] The undersigned observes that this Court's "Social Security Briefing Order" (3:13-mc-198-FDW; Document No. 1) requires that the "fifth section of the Memorandum shall set forth the plaintiff's arguments in separate subjections that address each issue and alleged error presented for review." Plaintiff's brief fails to meet this requirement.

A.      **Substantial Evidence**

In her first assignment of error, Plaintiff argues that the ALJ's decision "was erroneous in that it was not based on the substantial evidence of record." (Document No. 11-1, p.2). Specifically, Plaintiff alleges that the ALJ "based his conclusion almost exclusively on the findings of a one-time consultative examination performed nearly a year prior to December 2010, in March of 2009." (Document No. 11-1, p.4) (citing Tr. 294-301). According to Plaintiff, the ALJ's reliance on the clinical psychological evaluation conducted by Michelle Coates, M.A., a consultative examiner, was problematic because "there are inherent limitations to a single, time-limited exam" such as "whether an exam performed in early 2009 accurately reflects the claimant's limitations in 2010, 2011, or 2012." (Document No. 11-1, p.4). Moreover, Plaintiff alleges, "Ms. Coates's findings differed from every other mental health professional who examined and treated the plaintiff during the time period under review…." (Document No. 11-1, p.6).

Defendant submits that, contrary to Plaintiff's argument, the ALJ relied considerably on the record, including but not limited to the psychological evaluation conducted by Ms. Coates. (Document No. 13, p.5) (citing Tr. 33, 294-301). In his decision, the ALJ considered and gave significant weight to the consultative report that found Plaintiff to be psychiatrically stable and that she did not "possess any intellectual or cognitive barriers to employment." (Document No. 13, p.5) (citing Tr. 28, 33, 301). As noted by Defendant, the consultative examiner reported that Plaintiff's obsessive compulsive disorder did not significantly interfere with her day-to-day routine. (Document No. 13, p.6) (citing Tr. 300). Defendant further notes that the ALJ "has discretion to give weight to a consultative exam report." (Document No. 13, p.6) (citing Powell v. Astrue, 927 F.Supp.2d 267, 274 (W.D.N.C. 2013)).

According to Defendant, the ALJ considered and cited to other substantial record evidence, in addition to the consultative exam report conducted by Coates, in support of his disability determination that are consistent with record evidence from 2010, 2011, and 2012. (Document No. 13, pp.5-6). For example, the ALJ considered the medical opinions from two nonexamining state agency medical consultants, Dr. Arne Newman and Dr. Jessica Anderton. (Document No. 13, p.6) (see Tr. 32, 79-81, 94-97). Defendant concludes that the ALJ appropriately assigned significant weight to the mental RFC assessments of these consultants since the "opinion of a nonexamining physician can constitute substantial evidence in support of the ALJ's decision when it is consistent with the record." (Document No. 13, p.6) (citing Smith v. Schweicker, 795 F.2d 343, 345-346 (4th Cir. 1986)).

Defendant also highlights the consistencies between the medical opinions of Dr. Newman and Dr. Anderton with other medical findings and treatment notes in the record. (Document No. 13, p.7). To start, the ALJ discussed Plaintiff's full-scale IQ score of 105 that corresponds to average intellectual function. (Document No. 13, p.7) (Tr. 19, 258, 261). The ALJ also discussed a treatment note dated November 2, 2010, in which Dr. Patrick Lillard reported that Plaintiff was stable. (Document No. 13, p.5) (citing Tr. 28, 303). In another instance, the ALJ referenced an evaluation conducted on April 19, 2011 whereby Dr. David Garver determined that "Plaintiff was oriented times three, with linear and goal-oriented thought process; good judgment; and good insight." (Document No. 13, p.5) (citing Tr. 28-29, 339). Consistent with Coates' opinion that Plaintiff's obsessive compulsive disorder did not significantly interfere with her day-to-day routine and that she was stable, the ALJ referenced another of Dr. Garver's treatment notes that indicated that Plaintiff had an 80 percent improvement with respect to her obsessions and rituals. (Document No. 13, p.6) (citing Tr. 32, 394).

8

The undersigned observes that not only did the ALJ specifically address these consistencies, but he also cited to numerous medical opinions and treatment notes of Plaintiff's other physicians, including Dr. Tammy Boyd from 2002 to 2009, Dr. Jennifer Olson from 2008 to 2012, Dr. James Armstrong from 2011, Dr. Garver from 2011 to 2012, and Dr. Suzanne Kirby and Dr. Lillard from 2009 to 2010. (Tr. 27) (citing Tr. 219-252, 253-263, 264-279, 280-293, 302-334, 338-343, 344-351, 366-381, 382-393, 394-402); (Tr. 28) (citing Tr. 303, 348, 356-363, 366-381); (Tr. 29) (citing Tr. 253-263, 266, 338-343); and (Tr. 32) (citing Tr. 382-393, 394-402). Review of the ALJ decision indicates that the ALJ found the Coates' report persuasive in light of all the medical opinions and treatment notes of the various physicians and medical professionals spanning 2009 to 2012. (Tr. 27) (citing Tr. 280-293, 302-334, 338-343, 344-351, 366-381, 382-393, 394-402); (Tr. 28) (citing Tr. 303, 348, 356-363, 366-381); (Tr. 29) (citing Tr. 338-343); and (Tr. 32) (citing Tr. 382-393, 394-402).

Based on the ALJ's decision, and the arguments in Defendant's brief, the undersigned is not persuaded by Plaintiff's arguments that the ALJ's decision is not supported by substantial evidence. Ultimately, it is within the ALJ's discretion to give substantial weight to the opinion of a consultative examiner if it is consistent with the evidence. (Document No. 13, p.6) (citing Powell v. Astrue, 927 F.Supp.2d at 274). While the ALJ did appear to heavily rely on Coates' report, it is evident that Coates' main conclusions, particularly those concerning the stability of Plaintiff and whether Plaintiff's symptoms interfered with activities of daily living, were consistent with the medical findings and treatment notes of Plaintiff's other physicians, including Dr. Lillard and Dr. Garver. (Tr. 28) (citing Tr. 303, 338-343, 394).

Based on the foregoing, the undersigned is satisfied that the ALJ decision is supported by substantial evidence.

**B.     Consideration of Relevant Evidence**

Next, Plaintiff asserts that the ALJ erred in failing to consider and weigh all relevant evidence. (Document No. 11-1, p.4). Specifically, Plaintiff suggests that the ALJ failed to consider the psychiatric assessments conducted by psychiatrist, Dr. Lillard, beginning in July 2009 to November 2010; psychiatrist, Dr. Garver beginning in April 2011 to December 2012; Dr. Kirby beginning in July 2009 to November 2010; and Ms. Rosemary Kollstedt, a licensed clinical social worker, in December 2012. (Document No. 11-1, pp.4-6). In particular, Plaintiff suggests that the ALJ failed to consider Plaintiff's three Global Assessment of Function (GAF) scores provided by Dr. Lillard, Dr. Garver, and Ms. Kollstedt. (Document No. 11-1, p.5).

According to Plaintiff, because the ALJ did not specifically reference the treating medical professionals, namely Dr. Lillard, Dr. Garver, Dr. Kirby, and Ms. Kollstedt, the ALJ neglected to evaluate their findings. (Document No. 11-1, p.5) (Document No. 14, pp.1-2). However, as Defendant notes, "[t]he failure to discuss every specific piece of evidence 'does not establish that [the ALJ] failed to consider it.'" (Document No. 13, pp.8-9) (quoting Mitchell v. Astrue, No. 2:11cv56-MR, 2013 WL 678068, at *7 (W.D.N.C. Feb. 25, 2013) (internal citations omitted)). In fact, an ALJ "is not required to discuss every finding in every medical report." (Document No. 13, p.8) (quoting Pike v. Astrue, No. 1:09CV448, 2011 WL 9300, at *5 (M.D.N.C. Jan. 3, 2011) (internal citations omitted)).

As for the GAF score, Defendant notes that "a failure to reference a GAF score is not, standing alone, sufficient ground to reverse a disability determination." (Document No. 13, p.10) (citing Mitchell v. Astrue, 2:11-cv-56-MR, 2013 WL 678068, at *8 (W.D.N.C. Feb. 25, 2013)). Moreover, the ALJ explicitly discusses Ms. Kollstedt's assessment of Plaintiff and her GAF score, the lowest of the three, when he writes, "the claimant was estimated to have a Global Assessment

of Functioning Score of 38 and she reportedly had significant deficits even in activities of daily living to the extent that she was unable to follow simple directions, cook, wash clothes, and drive." (Tr. 32) (citing Tr. 382-393). Based on this, it is clear that the ALJ did in fact consider this evidence; nevertheless, the ALJ expressly refutes this evidence when he writes, "the record is devoid of evidence of significant deterioration to support the degree of limitations or difficulties set forth in the December 2012 assessment." (Tr. 32) (citing Tr. 394-402). In support of his dismissal of Ms. Kollstedt's GAF assessment, the ALJ cited to Dr. Garver's treatment notes that suggested notable improvements in Plaintiff's mental health, observing that her medications seem to be helping and that there is an 80 percent improvement in her obsessive symptoms. (Tr. 32) (citing Tr. 394).

While the ALJ did not directly cite to Dr. Garver's GAF score for Plaintiff, her score of 52 actually "indicate[s] moderate symptoms or moderate difficulties in social, occupational, or school functioning." (Document No. 13, p.12, n.7) (citing <u>Diagnostic & Statistical Manual of Mental Disorders</u> (<u>DSM-IV-TR</u>) 34 (Am. Psychiatric Ass'n, Text Revision, 4th ed., 2000)). Rather than explicitly evaluate the GAF score in his decision, it appears that the ALJ identified many of the observations provided in Dr. Garver's treatment notes, which were the basis for Dr. Garver's conclusion that Plaintiff had only moderate difficulties in social, occupational, or school functioning. (Tr. 32) (citing Tr. 394-402). These medical observations that the ALJ specifically highlighted in his decision included that Plaintiff presented with: adequate grooming and hygiene, cooperative behavior and good eye contact, normal psychomotor activity, normal speech, euthymic and congruent mood, goal-directed thought process, future-oriented thought contents, and intact insight and judgment. (Tr. 32) (citing Tr. 394-402). Given these findings, Defendant

maintains that Dr. Garver's treatment notes and examinations "do not show the presence of disabling mental limitations." (Document No. 13, p.12).

According to Defendant, as for Dr. Lillard's GAF score of 45, "a low GAF score is 'not an opinion the ALJ had to address, since it [does] not directly address [a claimant's] ability to perform work-related activities.'" (Document No. 13, p.10) (quoting Leovao v. Astrue, 2:11cv54-MR-DSC, 2012 WL 6189326, at *5 (W.D.N.C. Nov. 14, 2012)). Furthermore, there is substantial evidence to suggest that the ALJ did consider Dr. Lillard's assessment, but found it unpersuasive given the inconsistencies not only between Dr. Garver's findings and Dr. Lillard's findings, but also between Dr. Lillard's findings and the GAF score that Dr. Lillard assigned to Plaintiff. (Tr. 28) (citing Tr. 303); (Tr. 28-29) (citing Tr. 338-343); and (Tr. 32) (citing Tr. 394-402). For instance, as to the conflict between Dr. Lillard and Dr. Garver, Dr. Lillard's assessment of Plaintiff "indicated difficulties with auditory hallucinations, obsessions and suicidal ideation." (Document No. 14, p.2) (Tr. 314-318). Dr. Garver's treatment notes provide that Plaintiff did not suffer from auditory or visual hallucinations, delusions, thought broadcasting, thought insertion, ideas of reference, or serious suicidal or homicidal ideation. (Tr. 28-29) (citing Tr. 339).

As for inconsistencies within Dr. Lillard's feedback, while the physician did assign Plaintiff a 45 GAF score, which according to Plaintiff "implies some impairment in reality testing or communication or major impairment in several areas, such as work or school, judgment, thinking or mood (40), ranging to serious symptoms or any serious impairment in social, occupational, or school functioning (50)," (Document 11-1, p.5), Dr. Lillard reported that Plaintiff not only was intelligent with cooperative behavior but also "had good cognition; linear thought processes; okay attention, orientation, and memory; and good fair judgment/insight," (Document No. 13, p.11) (citing Tr. 316-18). Moreover, as Defendant notes, "this court has held that GAF

scores ranging from 45 to 50 are not evidence that a claimant's mental impairment is vocationally disabling." (Document No. 13, p.10) (See Brewton v. Astrue, No. 1:09cv188, 2010 WL 3259800, at *7 (W.D.N.C. July 26, 2010) (internal citations omitted)).

While Plaintiff contends that the ALJ's "decision virtually ignores the records…," (Document No. 11-1, p.4), the undersigned finds that Plaintiff misreads the ALJ decision, as the ALJ specifically cited to the reports of Dr. Lillard, Dr. Garver, Dr. Kirby, and Ms. Kollstedt. (Tr. 27) (citing Tr. 302-334, 338-343, 382-393, 394-402); (Tr. 28-29) (citing Tr. 303, 338-343); and (Tr. 32) (citing Tr. 382-393, 394-402). As Defendant notes, "'[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ).'" (Document No. 13, p.3) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

Based on the foregoing, as well as the arguments in Defendant's brief, the undersigned is persuaded that the ALJ properly considered all the relevant evidence, including the reports of Plaintiff's treating medical professionals. In fact, the ALJ's decision appears to be supported by substantial evidence.

## C. Medical Opinions of Treating Sources

Finally, Plaintiff argues that the ALJ erred in failing to give proper weight to the findings and opinions of Plaintiff's treating psychiatrists and therapists. (Document No. 11-1, p.2). Plaintiff contends that it is "impossible to determine from his decision how the ALJ weighed the factors relating to opinion evidence of the treating physicians and therapist, or whether he considered these factors at all." (Document No. 11-1, p.6). Plaintiff further asserts, "[a] reading of the decision only tells us that the plaintiff had unspecified mental health treatment for some period of time and then in November 2010 was 'stable.'" (Document No. 14, p.3). Plaintiff suggests that the ALJ had no "cognizance of the plaintiff's condition from June 2009 to March 2011." Id.

13

As noted above, the ALJ discussed Plaintiff's condition and that she showed symptoms of obsessive thoughts, ritualistic behavior; binging and purging; social isolation; depression, anxiety; and panic attacks. (Document No. 13, p.12) (citing Tr. 27, 339). However, Defendant submits, "[w]hile the record contains treatment notes from Dr. Lillard, Dr. Garver, and Dr. Kirby, those treating sources did not provide a medical opinion on Plaintiff's functional capacity or ability to perform sustained work-related activities. (Document No. 13, p.15) See (Tr. 303-334, 339-343, 394-402); 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)…what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."); Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 651 n.3 (6th Cir. 2009) (physician's general statements regarding typical symptoms and limitations of the plaintiff's impairment was not a medical opinion); Brock v. Colvin, No. 2:13–cv–0039–FDW–DSC, 2014 WL 5328651, at *8 (W.D.N.C. Oct. 20, 2014) (finding that a physician's treatment notes did not constitute a medical opinion, where the physician did not provide an opinion regarding functional limitations that required any further discussion by the ALJ).

While Plaintiff may disagree with the ALJ's conclusion, the ALJ did address the weight given by stating in his decision that he gave "great weight" to the Coates' report, which was generally substantiated by the reports of Plaintiff's treating physicians, including the observation by Dr. Lillard that Plaintiff was in fact "stable" as of November 2010, and Dr. Garver's report that Plaintiff has "markedly improved." (Tr. 28) (quoting Tr. 303), (Tr. 32) (quoting Tr. 394), (Tr. 33) (citing Tr. 294-301); see also (Tr. 27) (citing Tr. 302-334, 338-343, 382-393, 394-402); (Tr. 28-29) (citing Tr. 338-343); (Tr. 32) (citing Tr. 382-393, 394-402). As previously noted, the ALJ's decision explicitly discusses the opinions of Ms. Kollstedt, Dr. Garver, Dr. Lillard and Dr. Kirby.

(Tr. 27) (citing Tr. 302-334, 338-343, 382-393, 394-402); (Tr. 28-29) (citing Tr. 303, 338-343); (Tr. 32) (citing Tr. 382-393, 394-402). Moreover, the ALJ opined that he gave "no weight" to the physical assessments of the State agency medical consultants, but gave "significant weight" to the mental assessments of the State agency medical consultants. (Tr. 32) (citing Tr. 72-83, 85-99). Ultimately, the ALJ concluded that "[a]s for the opinion evidence, there are no medical assessments indicative of total and permanent disability." (Tr. 32).

In support of his conclusion, the ALJ emphasized that, even with mental impairments, "Plaintiff spent time on the Internet (Tr. 303); did online journaling and drawing (Tr. 257); joined an art studio (Tr. 298); took care of her hygiene needs unassisted (Tr. 298); drove several times a week (Tr. 298); played video games about once a week (Tr. 298); and read several times a week (Tr. 298)." (Document No. 13, p. 17) (citing Tr. 28-29, 31-32). The ALJ added that despite having mental impairments, Plaintiff managed to obtain her General Equivalency Degree and that she was "very skilled" with the computer and worked on graphic design. (Document No. 13, p. 8) (citing Tr. 29, 256, 266).

According to Plaintiff, "[u]nless the ALJ has analyzed all evidence and sufficiently explained the weight he has given to obviously probative exhibits, a reviewing court cannot determine whether his conclusions are rationally based on the substantial evidence of record." (Document No. 11-1, p.6). However, the undersigned observes that Plaintiff failed to cite to any legal authority to support her position. Id.

The undersigned finds that the ALJ properly assigned weight to the findings and opinions of Plaintiff's treating sources. The undersigned concludes that the ALJ's decision is supported by substantial evidence of record.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 11) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 12) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: June 19, 2015

David C. Keesler
United States Magistrate Judge